## McGrath's Estate

*Julian W. Barnard,* for petitioners; *Theodore Lane Bean,* contra.

HOLLAND, P. J., September 6, 1933.—Decedent died on February 5, 1933, intestate. On February 7, 1933, Edith Hatfield McGrath applied for letters of administration, representing herself as his widow, and letters of administration were granted to her that day.

Subsequently, the petitioners in this proceeding petitioned the register of wills to revoke these letters on the ground that she was not his widow in fact, she never having been married to him. This she admitted but claimed to be decedent's common-law wife. The proceeding before the register of wills was settled and a written stipulation of counsel filed, a copy of which is attached to the petition in this proceeding. The stipulation provided that the letters to Edith Hatfield McGrath be revoked, that letters be granted to her and Norristown-Penn Trust Co., and that certain costs be paid out of the estate. Accordingly, the former letters were revoked, and letters were granted on March 13, 1933, to Edith Hatfield McGrath and Norristown-Penn Trust Co. On March 14, 1933, the administrators' bond was filed, in the sum of $10,000, in which Edith

Hatfield McGrath and Norristown-Penn Trust Co. were principals and Norristown-Penn Trust Co. surety for Edith Hatfield McGrath. On March 29, 1933, an inventory was filed. On May 15, 1933, John F. McGrath and Thomas H. McGrath filed their petition in this proceeding for the removal of Edith Hatfield McGrath as administrator, as authorized by section 53 of the Fiduciaries Act of 1917, on the ground that the assets of the estate are being jeopardized and are likely to be jeopardized. An answer was filed by Edith Hatfield McGrath on May 25, 1933, and a hearing on petition and answer was had June 28, 1933.

At the hearing several facts developed, in addition to those hereinbefore recited. In addition to Edith Hatfield McGrath, if she is in fact decedent's widow, the parties in interest are the two petitioners, who are brothers, other brothers and sisters, and nephews and nieces, the children of deceased brothers and sisters. The testimony and the entire atmosphere of the case indicate that the most acrimonious and uncompromising antagonism exists between said widow and these next of kin. It is doubtful whether these two hostile sides could be brought to agree to anything, reasonable or otherwise. The entire estate, including certain personalty now in the possession of the alleged widow, is unlikely to total in value much over $5,000 after the deduction of debts, so that, if she proves herself to be in fact decedent's widow, she will be entitled, upon application, to practically all the estate. This fact adds ample fuel to an already raging flame of hatred. It is also obvious that there is a temptation on the part of the widow to use her position of cofiduciary as a lever to support her doubtful claims as decedent's widow.

It appears, although it is not entirely clear, that there was a collateral oral agreement at the time of the aforesaid stipulation of counsel, that all property of the estate should be turned over to the corporate coadministrator, Norristown-Penn Trust Co. At least, five bonds and a bank account were turned over by the widow to the company. This property also appears in the inventory. It is also obvious that Norristown-Penn Trust Co. was the nominee of the petitioners at the settlement of the controversy before the register of wills.

The widow admits she has certain other property which she refuses to turn over to her cofiduciary, claiming that it is her property, which was given her by decedent in his lifetime. This property consists of an automobile, a three-stone diamond ring, a diamond horseshoe stickpin, two Elk emblems, a gold watch and chain, an alligator leather traveling bag, private papers, and personal effects. The value of this property is estimated at from about $500 to about $2,500.

Section 53(a) of the Fiduciaries Act of 1917 sets out in its clauses various grounds for the removal of a fiduciary. The petitioners seem to invoke particularly clause eight, relative to probable jeopardy of the interests or property of the estate.

The decisions are based on various of these clauses, but in many cases the courts have removed administrators or executors without invoking any particular clause, on the broad ground of such removal being for the best interests of the estate and the distributees.

Henry's Estate, 54 Pa. Superior Ct. 274 (1913), is chiefly relied upon by the petitioners. The reason for the removal of the executor in that case was the fact that he asserted claims against the estate to the extent of two thirds of its value, which were disputed by the sole beneficiary. We do not regard the case as conclusive of this case. True it is that the widow claims certain property which was once the decedent's, but which she claims decedent gave her. She admits her possession of the property and submits herself to the jurisdic-

tion of this court. In Henry's Estate, the executor was a stranger to the estate. He was not a distributee under the will and sought to take away two thirds of the estate from the sole beneficiary. Certainly it could not be said that the widow could not continue as an administratrix because she asserted her claim to be the widow, even though that claim is subject to attack. We do not regard Henry's Estate, therefore, as compelling authority to remove her from her office, but we do hold that the circumstance of her claiming the property aforesaid can be considered with other causes of removal, if there are any. What other circumstances are there?

It was shown at the hearing that there were four valuable horses, in two of which a nephew of decedent, and an interested distributee in the estate, claims to have a partnership ownership with the decedent. All four horses were surreptitiously carried away by this nephew after decedent's death and are in his possession. At the hearing, it was shown that Mrs. McGrath as administratrix attempted to replevin them but could not furnish the necessary bond. It was also intimated that the corporate coadministrator which could furnish its own bond intended to replevin the horses. At any rate, it is the corporate administrator's, as well as the individual administrator's, duty to do all possible to obtain for the estate whatever rightful interest it has in these horses.

It was also intimated at the hearing, although the same does not appear in the testimony, that there was some disagreement between the respondent and Norristown-Penn Trust Co. as to the value of the horses upon the occasion of a contemplated sale to a prospective purchaser. The acrimony between the respondent and the other interested distributees has heretofore been referred to. While unfriendly relations among distributees or among distributees and administrators is not alone ground for removal, it bears upon the question, and taken together with other acts of a fiduciary may cause his removal if, on the whole, in the discretion of the court, it is to the best interest of the estate and the individual interest of the distributees: Mayerhofer's Estate, 11 Erie 233 (1928).

Were the coadministrators of this estate the widow and one of the next of kin, her removal would not be considered, or if considered, would be made only upon the contemporaneous removal of the other also, with the idea of securing an impartial efficient substituted administrator, who would marshal the assets of the estate and account for them, motivated solely by the best interests of the estate and untrammelled by self-interest or acrimony. It is the character of the corporate coadministrator that impels us seriously to consider the removal of the respondent individual coadministrator. The history of the administration of the estate so far has indicated that the bitterness between the widow and the other distributees has with reference to the property in her possession and the interest of the estate in the horses caused an impasse, or at least an intimidation of the corporate fiduciary which has embarrassed it and interfered with its efficiency in performing its duties.

The corporate fiduciary is also put at an unfair disadvantage by her and is likely to be more so, because it is surety on her bond. This circumstance practically puts the whole responsibility for any error or loss upon it.

The Norristown-Penn Trust Company's position in its fiduciary capacity is obviously one of absolute impartiality. It is a professional fiduciary and can have no possible motive other than to administer the estate to the best of its capacity for the best interest of the estate and all the beneficiaries without discrimination. If the present condition continues, it can only lead to further embarrassments and paralysis of action. The question suggests itself whether the best interests of the respondent herself do not dictate her removal. Were

124

she eliminated, the remaining corporate fiduciary could realize what is possible from the horses unimpeded. Further, it could try the title to the property in dispute between the estate and the respondent in a proper court of competent jurisdiction and have the matter settled, finally account for the whole estate and, as a stakeholder, submit it to the court to determine who is entitled to it and in what proportions. At the audit of its account, the question whether respondent is in fact decedent's widow can be determined.

Under all the evidence and circumstances, hereinbefore considered, we are of the opinion that the continuance of the respondent as a coadministrator is likely to jeopardize the interests of the estate and of the respective distributees, including the respondent herself, and that it is to the advantage of the estate and to said distributees that she should be removed and allow the remaining coadministrator to complete the administration.

We are, however, of the opinion that the respondent should have her share of the administrator's commissions and the same will be allowed her at the audit. Six months have transpired since she was first appointed administratrix, all of which time she has performed her duties according to her capacity and assumed the responsibilities of her office. This can be no hardship to Norristown-Penn Trust Co., for it is inclusively within its own agreement.

And now, September 6, 1933, it is ordered and decreed that Edith Hatfield McGrath be, and she hereby is, removed from her office of coadministrator of the estate of Edward J. McGrath, deceased, and the remaining coadministrator, Norristown-Penn Trust Co., will continue and complete its duties and offices as the sole administrator; and the said Edith Hatfield McGrath is ordered and directed to deliver to the said remaining coadministrator all assets, money, property, records, and papers belonging to said estate and appertaining thereto. Costs of this proceeding to be paid out of the estate.

From Aaron S. Swartz, Jr., Norristown, Penna.